IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 NOV 26 A 8: 23
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| TIMOTHY CRENSHAW, and <br> KENT CRENSHAW, as owner of the <br> DIAMONDS CLUB, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CITY OF MONTGOMERY, and <br> LT. L.C. CREMEENS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 2:07cv1035-MEF <br> ) <br> ) **JURY DEMAND** <br> ) <br> ) |

## COMPLAINT

NOW COME plaintiffs, TIMOTHY CRENSHAW and KENT CRENSHAW, owner of the DIAMONDS CLUB, and make the following Complaint.

### I. Introduction

The complaint seeks to recover damages, secure equitable and other relief, and to redress the deprivation of rights and privileges of a citizen of the United States. This action arises under the United States Constitution, particularly, the Fourth and Fourteenth Amendments, and under the laws of the United States. The Plaintiff seeks redress via 42 U.S.C.A. §§ 1983 and 1988. Plaintiffs invoke pendant jurisdiction of their state tort claims.

### II. Parties

1.  Plaintiff Timothy Crenshaw is an African American and is a resident of Montgomery, Alabama; he is over the age of 19 years.

2.  A resident of Montgomery, Kent Crenshaw is an adult African American and is the owner of the Diamonds Club, a nightclub located in the City of Montgomery.

3.     Defendant L.C. Cremeens (Cremeens) is employed as an officer with the Fire Department of the City of Montgomery. He is sued individually. At all times relevant, he acted under color of state law as an officer for the City of Montgomery.

4.     The City of Montgomery (City) is a municipal corporation, organized and existing under the laws of Alabama.

### III. Jurisdiction and Venue

5.     This Court has jurisdiction of the claims pursuant to 28 U.S.C. § 1331, in that the action arises under the laws of the United States and pursuant to 28 U.S.C. § 1343, in that the action seeks to redress the deprivations of rights and privileges secured by the Constitution and laws of the United States. Jurisdiction over the state torts is conferred by the doctrine of pendent jurisdiction as those claims arise from the same common nucleus as the federal claims.

6.     Venue is proper in that the claims arose in this judicial district; the Diamonds is located in Montgomery, Alabama, Timothy and Kent Crenshaw are residents of Montgomery, and defendant L.C. Cremeens work and reside in this district; the City is located in this district, and a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

### IV. Background

7.     Although the State of Alabama has not made over capacity in business establishments a criminal offense, and the City has not passed an ordinance making overcrowding a criminal offense, there exists a policy on the part of the Montgomery, through its fire marshal, to regularly, as a mater of course, cite only owners of nightclubs

for overcrowding and to charge them or their employees with a criminal offense. The City then tries these cases in the Municipal Court of Montgomery, Alabama.

8.      The City attempts to rationalize its policy or custom on the basis that it is within its police power to close nightclubs that are over capacity—overcrowded—and on this premise, they are closed, therefore, for safety reasons. However, the City has a policy where its enforcement of its policy is limited exclusively to closing nightclubs for alleged overcrowding, but no other establishments. For example, the City jail is constantly over-capacitated, overcrowded, as well as the County jail. However, no employee of either entity has been criminally cited for overcrowding. Also, the City Council meeting hall is often overcrowded, but the City has never issued a citation for any employee or council member to be criminally cited for being over capacity. No restaurant has been closed for overcrowding, and no employee of any restaurant has been criminally cited for being overcrowded. The hotels and motels, owned by non-African American, are all over capacity. Neither has been closed, and no employee of these motels or hotels has been criminally charged with overcrowding or reckless endangerment. Except for Timothy Crenshaw, Mike Williams, and Kendrick Dortch, African-American who contested the City's charging them criminally for overcrowding, the City has never charged anyone for reckless endangerment for being over capacity.

9.      The City of Montgomery has adopted and ratified the action of the fire marshal by choosing to prosecute overcrowding charges as criminal offenses in its municipal court. It receives fines from criminal convictions. By charging these nightclub owners with a criminal offense of overcrowding and prosecuting them for this offense, the City can assess a $500.00 fine and cost costs, and sentence them to jail. Often, these

owners do not contest the charge, but rather plead guilty, get convicted, pay a fine and cost costs. The conviction remains on the record as a criminal conviction.

10. Each Thanksgiving, in the City, Tuskegee University and Alabama State University play a football game commonly known as the "Turkey Day Classic." During the Thanksgiving Holiday, alumni and supporters from each university flood the City. The whole week of Thanksgiving is quite festive, and most of the African American nightclubs are crowded, as well as most of the hotels and motels in the City.

### V. Facts

11. On Thanksgiving Day, November 24, 2005, Timothy Crenshaw worked at the Diamonds, where most of patrons are almost exclusively African Americans.

12. During the evening of November 24, 2005, while Timothy Crenshaw was working at the Diamonds, Cremeens, an officer with the City's Fire Department, came to the Diamonds, ordered all patrons to exit the club, and closed it. Also, Cremeens did the same at two other African American nightclubs, the Rose and the Cotton Club, where he arrested an employee at each, and ordered these clubs closed until the employees had gone to court.

13. Despite the fact that Timothy Crenshaw was not the owner of the Diamonds, had not allowed anyone to enter the Diamonds, and Cremeens had not witnessed Timothy Crenshaw committing any criminal act, Cremeens requested Timothy Crenshaw to provide to him his name, demanded his driver's license, and cited him criminally for "overcrowding."

14. Contemporaneously, Cremeens ordered the Diamonds closed until Crenshaw had "gone to court" on the overcrowding charge.

4

15. Subsequently, by written correspondence dated November 29, 2005, and served on Kent Crenshaw and Timothy Crenshaw November 29, 2005, in court, J.R. Amsler, the then-Fire Marshal for the City, informed the Crenshaws that the City, through its Mayor and the Fire Marshal's Office, was ordering the Diamonds to remain closed until the next council meeting, which was to be held on December 6, 2005.

16. On the orders of Mr. Cremeens, Mr. Amsler, and the mayor, all acting as officials of the City of Montgomery, the Diamonds was not open during the weekend of the Thanksgiving Holiday; nor was it open days following that holiday weekend. It remained closed on the orders of the city officials for approximately seven days.

17. Prior to Crenshaw proceeding to court on the charge of overcrowding, the City Council of Montgomery, called an emergency session to determine if the Diamonds should remain closed until Dortch had resolved his criminal charge in court. After the hearing had been concluded, the City Council allowed the Diamonds to reopen.

18. Subsequently, Crenshaw was summoned to court to defend a criminal charge of overcrowding.

19. The charge against Crenshaw proceeded to court in the Municipal Court of Montgomery. Crenshaw moved for dismissal and informed the court, the prosecution, and defendant Cremeens that overcrowding was an administrative offense, not a criminal offense in Alabama.

20. The court denied the motion and required Crenshaw to defend against a criminal charge of overcrowding.

21. Later when Crenshaw came to court prepared to defend against the charge of overcrowding, the City informed the court that there were some technicalities in the

complaint and asked that it be "nol prossed." Crenshaw objected, but the court granted that request.

22. Later, for the same alleged criminal conduct for which Crenshaw had been previously charged—in the initial complaint—Mr. Cremeens and the City changed the charge to "reckless endangerment."

23. Again, Crenshaw was ordered to attend court on the same alleged criminal conduct; Crenshaw filed for dismissal; again, the municipal court denied the motion.

24. However, again, when the City moved for dismissal on the basis of a technicality, the court granted their motion so that the complaint could be amended to include facts that the defendants considered to be adequate to state a criminal offense.

25. Subsequently, Cremeens filed another criminal complaint in which he made new allegations or fabricated facts in an attempt to state a criminal charge of reckless endangerment, based on the same conduct for which he had previously cited Crenshaw for overcrowding. With each complaint, Cremeens added facts or changed facts in an attempt to support the criminal charge he was making. All three complaints merely alleged that the Diamonds was over the capacity as set by the fire marshal.

26. So, for the third time, for the same alleged conduct in each instance, Crenshaw was required to defend against a criminal charge. He defended this charge in court but was eventually found guilty of reckless endangerment by the municipal court, fined $500.00 and court cost, and received a sentence of 75 days incarceration, which was suspended.

27. At the trial, Cremeens was asked why did he file a charge of reckless endangerment against Crenshaw but had never brought such a charge against any other

defendant for the same alleged conduct. Cremeens responded that he had received his orders from "higher ups" and that the reckless endangerment charge was instituted because no other defendant charged with overcrowding had ever challenged the City on the charge of overcrowding.

28. Crenshaw appealed his conviction to the Circuit Court of Montgomery County, where the criminal proceeding terminated in Crenshaw's favor when the court dismissed the charge against Crenshaw on June 29, 2006.

29. Defendant Cremeens and the City have treated Crenshaw differently than similarly situated white persons. They have acted toward him in an arbitrary and capricious manner, and they have been selective in the application of the law. They specifically targeted African American nightclubs during the Thanksgiving Holiday weekend. Although many bars, grills, restaurants are overcrowded during the Auburn-Alabama "Iron Bowl" weekend, none of the establishments that cater predominately to "white" patrons have been closed for overcrowding; no white employee has been criminally cited for overcrowding at either of these restaurants.

30. Prior to charging Crenshaw and the two other aforementioned persons with a criminal offense of reckless endangerment for overcrowding, neither Cremeens nor the City had ever instituted a charge of for reckless endangerment for overcrowding, even where there had been overcrowding.

31. At the time Crenshaw was criminally charged with reckless endangerment for alleged overcrowding, the City had never prosecuted any white person on a charge of reckless endangerment for overcrowding, even where there had been overcrowding.

32. Neither Cremeens nor the City has forced any white establishment to remain closed for over capacity and to remain closed until a cited defendant had gone to trial on the charge, even where there has been overcrowding.

33. In forcing the Diamonds to close for seven days, without affording it due process, Cremeens and the City acted beyond the scope of their authority. Cremeens lacked arguable probable cause to file criminal charges for overcrowding and reckless endangerment. The City lacked arguable probable cause to prosecute the charges.

34. To defend against these charges, Crenshaw was compelled to attend court several times.

35. There were no facts that would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the Crenshaw was guilty of a criminal offense for the alleged conduct for which he was accused of because no criminal offense occurred, and the alleged conduct had not been made a criminal act by Alabama or the City..

36. Cremeens, acting on behalf of and with authority of the City, acted negligently or with misinterpretation of the law on behalf of the City of Montgomery. The City, through its Mayor and Fire Chief, adopted and ratified the actions of Cremeens.

37. As a result of the actions of Cremeens, acting on behalf of the City, Crenshaw's rights were violated; his freedom was restrained. He had to expend sums of money to secure legal representation, He missed time from work. He lost income; He was falsely accused. He had to defend against an illegal charge. A conviction remains on his record. The defendants' actions injured him and caused him to suffer humiliation and mental anguish.

38. As a result of the action of Mr. Cremeens, acting on behalf of the City, and the City's illegal custom and policy of closing nightclubs for overcrowding, Kent Crenshaw, as owner of the Diamonds and the Diamonds lost substantial revenue and lost customers during the Thanksgiving Holiday weekend. On behalf of the Diamonds, Kent Crenshaw had to expend sums of money to secure legal representation. Kent Crenshaw suffered humiliation mental anguish.

## VI. Federal Claims

### COUNT I—ILLEGAL SEIZURE AND DETENTION

39. The plaintiffs repeat and re-allege paragraphs 1 through 38 as if expressly set forth here at length.

40. Defendant Cremeens acted under pretense and color of law and his official capacity, but such acts were beyond the scope of his jurisdiction and without authorization of law. He, individually, and/or in concert with others, acted willfully, knowingly, and with specific intent to deprive the Timothy Crenshaw of his right to freedom from illegal seizure of his person and of his rights to freedom from unlawful detention, which rights are secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States.

41. ` Cremeens had no authority to bring a criminal complaint for reckless endangerment and overcrowding. The City, in refusing to dismiss the charges, prosecuted these illegal charges. . By doing so it ratified and acquiesced in Cremeens' illegal conduct. He had no authority to close the Diamonds without affording it due process of law. The City, in requiring the Diamonds to remain closed without affording it a hearing, ratified and acquiesced in Lt. Cremeens' illegal conduct.

42. Defendant Cremeens acted maliciously and without probable cause, and his action deprived the plaintiffs of their constitutional rights. There is a direct causal link between the municipal policy or custom and the constitutional deprivation suffered by the plaintiffs. In acting as he did, Cremeens was executing the City's policy or custom, and in so doing inflicted injury to the plaintiffs.

43. The defendants' acts against Timothy Crenshaw amount to an unlawful seizure.

WHEREFORE, Timothy Crenshaw requests judgment against the defendants, and each of them for:

    a. compensatory damage against both defendants;

    b. punitive damages against defendant Cremeens;

    c. reasonable attorney fees; costs of suit; and

    d. such other further relief as the court deems just and proper.

### COUNT II—SELECTIVE AND UNEQUAL TREATMENT/ DENIAL OF EQUAL PROTECTION OF THE LAW

44. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-43 as if fully set forth herein.

45. Cremeens and the City retaliated against and targeted Crenshaw because of Crenshaw's exercising his constitutional right in seeking redress of the overcrowding charge, abused the judicial process in instituting criminal charges for reckless endangerment when it was clearly established that the alleged conduct, on which Cremeens and the City premised the entire prosecution, was not a criminal act, had never been made a criminal act by a city ordinance, and had not been declared a criminal act by

the Legislature. The defendants targeted African American nightclubs and treated them more harshly than other clubs.

46. The actions of Cremeens and the City amount to selective enforcement and violate Kent Crenshaw's and Timothy Crenshaw's constitutional rights secured by the equal protection clause of the federal Constitution.

WHEREFORE, the plaintiffs request judgment against the defendants, and each of them for:

   (a) compensatory damages;

   (b) punitive damages against defendant Cremeens;

   (c) reasonable attorney fees; costs of suit; and

   (d) such other further relief as the court deems just and proper.

### COUNT III—DENIAL OF DUE PROCESS OF LAW

47. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

48. There is a direct causal link between the municipal policy or custom and the constitutional deprivation suffered by the plaintiffs. Cremeens was executing the City's policy on custom, and in so doing inflicted injury to the plaintiffs.

49. The actions of the defendants violate the plaintiffs' rights to due process.

WHEREFORE, the plaintiffs request judgment against the defendants and each of them for:

   (a) compensatory damages;

   (b) punitive damages against defendant Cremeens;

   (c) reasonable attorney fees; costs of suit; and

(d) such other further relief as the court deems just and proper

## VII. Pendent State Claims

### COUNT IV—MALICIOUS PROSECUTION

50. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

51. Cremeens instituted, with malice, a prior judicial proceeding; he lacked probable cause to do so, his action was malicious, and the proceeding terminated in favor of Crenshaw; Crenshaw suffered damages.

52. The City adopted and ratified Cremeens' actions. The defendants' acts amount to an malicious prosecution.

### COUNT IV—ABUSE OF PROCESS

53. The plaintiffs re-allege and incorporate the allegations in paragraphs 1-45 as if fully set forth herein.

54. When he closed the Diamonds and the criminal complaint against Crenshaw, Cremeens possessed an ulterior purpose; he wrongly used the judicial process to close the Diamonds and to institute a criminal proceeding against Timothy Crenshaw when he knew or should have known that the purpose of a criminal proceeding was not intended to obtain a criminal conviction on persons who had not committed conduct that had not been deemed to be criminal by the state legislature or the City; hence, the conduct was not criminal in nature.

55. At the time Cremeens filed criminal charges against Crenshaw and the City convicted Crenshaw for reckless endangerment on allegations of overcrowding, it was clearly established that overcrowding was not a criminal offense; yet Cremeens and

the City acquiesced in the closing of the Diamonds and the continued criminal prosecution of Timothy Crenshaw.

56.     The acts of the defendants amount to an abuse of process.

WHEREFORE, Crenshaw requests from the defendants the following:

       (a)   compensatory damages against each defendant on each claim;

       (b)   punitive damages against defendant Cremeens on each claim;

       (c)   costs;

       (d)   expungement of the criminal arrest and conviction and/ or sealment of the criminal arrest and conviction; and

       (e)   the plaintiff requests other and further relief as the Court deems just and proper.

**THE PLAINTIFFS REQUEST A STUCK JURY ON ALL TRIABLE ISSUES.**

Respectfully submitted,

*/s/ Fred F. Bell*

FRED F. BELL (BEL014)

ADDRESS OF COUNSEL
1015 South McDonough Street
Montgomery, Alabama 36104
(334) 265-8176
(334) 265-8177 FAX
ffbell@netzero.com

13

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001252
Cashier ID: brobinso
Transaction Date: 11/26/2007
Payer Name: FRED BELL
--------------------------------
CIVIL FILING FEE
 For: FRED BELL
 Case/Party: D-ALM-2-07-CV-001035-001
 Amount:         $350.00
--------------------------------
CASH
 Amt Tendered: $350.00
--------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00

CRENSHAW ET AL V. CITY OF
MONTGOMERY ET AL
```