IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK L. DORTCH, and<br>RICHARD THOMAS, as owner of<br>the ROSE SUPPER CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.  2:07cv1034-MEF |

| | | |
|---|---|---|
| TIMOTHY CRENSHAW, and<br>KENT CRENSHAW, as owner of<br>the DIAMONDS CLUB,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF MONTGOMERY, and<br>LT. G.C. CREMEENS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.  2:07cv1035-MEF |

## MEMORANDUM IN SUPPORT OF DEFENDANT G.C. CREMEENS' MOTION FOR SUMMARY JUDGMENT

### I.

### Introduction

This case arises from warrants issued for the arrests of Plaintiffs Timothy Crenshaw and

Kendrick Dortch after the nightclubs they were managing on November 24, 2005 and November 25,

2005 were found to be seriously overcrowded  The overcrowding resulted in closure of the

Diamonds Club which Plaintiff Timothy Crenshaw was managing and his brother Kent Crenshaw owns as well as the closure of the Rose Supper Club (formerly known as Top Flight Club) which is owned by Plaintiff Richard Thomas and was managed on the night of closure by Plaintiff Dortch.

The facts are undisputed that fire investigator Defendant Lt. G. C. Cremeens received a complaint of overcrowding at the Diamonds Club on November 24, 2005. He then traveled to the club. He conducted a walk through inspection of the inside of the premise. His walk through inspection revealed that the club was seriously overcrowded. At that time he instructed Plaintiff Timothy Crenshaw to turn off the music and turn on the lights. Assisting police officers secured all exits but the front door. The patrons then exited through the front door as Cremeens calculated their number with a mechanical counter. Although the maximum capacity for the Diamonds Club on that date was 299, the number of persons who exited were 463. That was 164 more than the maximum capacity allowed by the City of Montgomery fire marshal's office.

Defendant Cremeens then left the Diamonds Club and inspected another club which appeared to be overcrowded. During that period and in the early morning hours of November 25, 2005 other complaints were received by Cremeens that the Rose Supper Club was overcrowded. Lt Cremeens traveled to the Rose Supper Club where he observed numerous cars blocking the roadway as the patrons appeared to be using the street for a parking lot. Cremeens then entered the establishment. At that time he saw a person at the front door with a counter. Cremeens then conducted a walk through inspection with the manager of the Rose Supper Club that evening, Plaintiff Dortch. As with the Diamonds Club, the Rose Supper Club appeared seriously overcrowded. The lights were ordered to be turned on and the music turned off. Assisting police officers secured all exits but the front entrance. Using a mechanical counter Defendant Cremeens then counted the patrons as they

2

exited the club. On that date the maximum capacity of the club allowed by the City of Montgomery fire marshal's office was 300. However, Cremeens counted 508 patrons exiting the club.

Following completion of his investigation of the two clubs, Cremeens then drove to the City municipal court to obtain a warrant for the arrest of Plaintiff Dortch and Plaintiff Timothy Crenshaw. The initial warrant designated the charge as overcrowding. That is a non-traffic citation. Later, Cremeens was advised by the chief magistrate and clerk of the municipal court that the City had adopted the National Fire Protection Association Code (NFPA) necessary to establish the maximum capacity of public establishments but the ordinance adopting the code did not contain any form of punishment for the offense of overcrowding. After conferring with the magistrate, Cremeens swore out a warrant for reckless endangerment pursuant to ALA. CODE §13A-6-24 (1975). That section of the criminal code states that "a person commits a crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Reckless endangerment is a class A misdemeanor.

For a reason not clear to Lt. Cremeens, he was asked by the magistrate's office to redo his affidavit in support of the warrant. He did so by adding his significant concerns about the situation he found at both clubs. That concern was based on fires in nightclubs in northern states which had resulted in substantial loss of life. Warrants were issued for the arrest of Kendrick Dortch and Timothy Crenshaw by an authorized magistrate for the City of Montgomery. The individuals appeared in municipal court and tried their case. Testimony was presented. Both individuals were found guilty of reckless endangerment by the municipal judge.

However, subsequent to their conviction the Plaintiffs Dortch and Timothy Crenshaw appealed to the Montgomery Circuit Court. Two different circuit judges found that the charge of

3

reckless endangerment could not be sustained and dismissed the cases. That action resulted in this lawsuit.

## II.

## The Legal Claims of Plaintiffs

Count I of the lawsuit is filed by Dortch and Timothy Crenshaw in their individual capacities. It is based on a violation of the Fourth Amendment of the Unites States Constitution as it applies to the states via the Fourteenth Amendment. The count alleges illegal seizure and retention. Only Dortch and Timothy Crenshaw demand judgment under Count I of the complaint.

Count II alleges a selective, unequal treatment or denial of equal protection of the law. It is alleged that Dortch and Timothy Crenshaw were signaled out improperly by means of a selective enforcement of the charge of overcrowding. Only Dortch and Timothy Crenshaw demand judgment under Count II of the complaint.

Count III of the complaint alleges that the actions of Defendant Cremeens and the City of Montgomery violated the Plaintiffs' rights to due process pursuant to the Fifth Amendment of the United States Constitution. Not only do Plaintiff Dortch and Timothy Crenshaw demand judgment in Count III but Richard (Richie) Thomas as owner of the Rose Supper Club and Kent Crenshaw as owner of the Diamonds Club seek compensation as well.

Count IV of the Plaintiffs' complaint alleges a state law claim for malicious prosecution. It is brought by Dortch and Timothy Crenshaw.

Finally, Count V alleges a state law claim for abuse of process. That count alleges that Cremeens possessed an ulterior motive to secure the warrants and that he wrongfully used valid judicial process to initiate a criminal proceeding against Dortch and Timothy Crenshaw.

4

Only Dortch and Crenshaw demand judgments under the malicious prosecution and abuse of process claims.

## III.

## **Standard of Review**

Under the FED. R. CIV. P., 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See Id. at 322-324.

Once the moving party has met its burden, Rule 56 (e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Yannella v. City of Dothan, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

Defendant Cremeens submits that he is entitled to summary judgment as to all claims of Plaintiffs in this case.

## IV.

### Defendant Cremeens has Qualified Immunity as to the Fourth Amendment Seizure Claims of Dortch and Timothy Crenshaw

These two Plaintiffs sue Defendant Cremeens in his individual capacity pursuant to 42 U.S.C § 1983. An individual sued under that statute in his individual capacity may enjoy qualified immunity from suit in certain situations. Dorsey v. Wallace, 134 F. Supp. 2d 1364, 1370 (N.D. Ga. 2001). Qualified immunity is a question of law for the courts, even when asserted on summary judgment. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The Eleventh Circuit Court of Appeals applies a two part analysis to determine the propriety of granting immunity to an individual sued pursuant to §1983. Dorsey v. Wallace, supra at 1371. First, the individual defendant must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. Id. Second, once the defendant meets the burden of discretionary authority, the burden then shifts to the plaintiff to show that the defendant objectively violated clearly established law. Id.; Tepper v. Canizaro, 2005 WL 2484644 (M.D. Fla. 2005). That burden can only be satisfied by demonstrating that the contours of the plaintiff's rights were so sufficiently clear that a reasonable government officer would have understood that his

6

actions were constitutionally repugnant. Id.

The decision to initiate an arrest of a plaintiff or to obtain a warrant for arrest of an individual is within a law enforcement officer's discretionary authority. Swan v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005) (arresting or attempting to arrest persons is a discretionary function and entitles an officer to state qualified immunity); Byther v. City of Mobile, 398 F. Supp. 2d 1222 (S.D. Ala. 2005) (officers were engaged in discretionary function in making arrest and therefore entitled to qualified immunity). Thus, Defendant Cremeens has met the first prong of the test for qualified immunity. The burden then shifts to Plaintiffs to demonstrate that Cremeens knew that his actions violated Plaintiffs' constitutional rights

In regard to administrative searches in general, it has been recognized that to comply with the Fourth Amendment such searches must be conducted with certainty, regularity and neutrality. Cottom v. Town of Seven Devils, 30 Fed. Appx. 230, 236, 2002 WL 369961 *6 (4th Cir. 2002). Accordingly, in Cottom the court recognized the burden on law enforcement officials in conforming their conduct to Fourth Amendment standards is not great in the area of traditionally regulated industries such as establishments licensed to serve alcoholic beverages. Id. The government may subject individuals and organizations to neutral regulations exercised for secular government purposes such as fire inspections. Id.; see also Islamic Center of Mississippi v. City, 840 F. 2d 293 (5th Cir. 1988).

Qualified immunity is very much the rule rather than the exception when officers are sued for damages in their individual capacities. Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). However, in Hope v. Pelzer, 536 U.S. 730, 739 (2002) the United States Supreme Court stated that it was not a strict rule that a law enforcement officer would be entitled to

7

immunity if the official had fair warning that his acts were unconstitutional. See Hope v. Relyer, 536 U.S. 730 (2002) (examining contours of qualified immunity for Eleventh Circuit); see also Storck v. City of Coral Springs, 354 F.3d 1307 (11th Cir. 2003) (noting that nothing in the language of the Florida statute prohibiting obstruction of an officer and execution of legal process or in the lawful execution of any legal duty stated with "obvious clarity" that an officer's arrest of plaintiff for refusing to turn her child over to authorities pursuant to an out-of-state custody order was unlawful; therefore, the officer was entitled to qualified immunity on plaintiff's Fourth Amendment claim). Put another way, while a specific case or fact situation is no longer required to place an officer on notice that his conduct is unlawful, the state of the law must be sufficiently clear so that the defendant officer is on notice that his conduct is unlawful. Hope v. Pelzer, supra at 739; Saucier v. Katz, 533 U.S. 194 (2001); See Addison v. Wilson, CV-02-A-222-N (M.D. Ala. 2003) (law not sufficiently clear to place officers on notice that force used to arrest violated plaintiff's constitutional rights); Liston v. Steffes, 300 F. Supp. 2d 742 (W.D. Wis. 2002) (even though defendant officer's stop of plaintiff's vehicle was illegal, officer entitled to qualified immunity because right not clearly established with sufficient specificity to give officer notice of illegality).

It is apparent in this case that Plaintiffs Dortch and Timothy Crenshaw were arrested upon probable cause based on the allegations of Defendant Cremeens that they had recklessly endangered the patrons of the establishments they managed. That arrest was the result of the independent judgment of the magistrate who issued the warrant. There can be no argument that Cremeens could thereby have had fair warning that his acts were unconstitutional. Certainly, if in fact he chose the wrong charge to bring against the two individuals there is no evidence that in doing so he would be violating Dortch's and Timothy Crenshaw's rights to be free of a Fourth Amendment seizure. Nor

8

is there any case law, similar fact situation or statute that would place him on notice that his actions were unlawful.

An arrest upon probable cause will not support an action under § 1983. Atwater v. City of Lago Vista, 532 U.S. 318 (2001) (arrest for failure to fasten children's seatbelts was upon probable cause and did not violate Fourth Amendment); Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003) (officer who arrested driver for refusal to sign traffic ticket held entitled to qualified immunity); Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002) (arrest for minor offense of honking horn was upon probable cause and did not violate Fourth Amendment); Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002) (qualified immunity from false arrest).

Probable cause to arrest does not require the same evidence as needed for conviction. Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002). See Adams v. Williams, 407 U.S. 143, 149 (1972) (probable cause does not require the same type of specific evidence of each element of the offense that would be needed to support a conviction); Kelley v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) (there is a substantial difference between the amount of proof necessary to constitute sufficient evidence to support a conviction and that necessary to support probable cause).

Furthermore, even if there were not probable cause for the arrest of Plaintiffs, arguable probable cause for arrest will protect a municipal official from liability under § 1983. Scarbrough v. Miles, 245 F.3d 1299, 1302 (11th Cir. 2001); Knight v. Jacobson, 300 F.3d 1272 (11th Cir. 2002) (qualified immunity if arguable probable cause for arrest for domestic violence); Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002) (reasonable mistake in arresting plaintiff was not constitutional violation); Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999); Montoute v. Carr, 114 F.3d 181 (11th Cir. 1991). Arguable probable cause exists when an officer reasonably could have

9

believed that probable cause existed in light of the information that the officer possessed. Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 1997).

Because an officer is entitled to qualified immunity if there was probable cause or arguable probable cause to arrest, an objective standard is applied. Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997). That is, if a reasonable person in the defendant's place could have acted the same way, the defendant's subjective intent is irrelevant. Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). Consequently, in Hamilton v. Lokuta, 9 F.3d 1548 (6th Cir. 1993) the court found that a presumed desire of the officer to put plaintiff out of business may or may not have been justified but could not suffice to defeat defendant's qualified immunity defense. See also Cottom v. Town of Seven Devils, 30 Fed. Appx. 230, 237, 2002 WL 369961 (4th Cir. 2002) (affirming summary judgment where plaintiff's allegations were based only on information and belief that defendant requested a fire inspection out of some sinister desire to put plaintiff out of business); Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560 (11th Cir. 1993) (affirming summary judgment with respect to plaintiffs' claim that prosecution of plaintiffs for restaurant overcrowding was to harass, oppress and ruin the restaurant owner).

Although a case directly on point to the issues before this Court could not be found, a number of analogous cases provide clear authority that Defendant Cremeens should be found to have initiated his affidavit of arrest on probable cause - or at least arguable probable cause - that the Plaintiffs had recklessly endangered the patrons of their establishments by allowing the establishments to be seriously over capacity.

In Storck v. City of Coral Springs, 354 F.3d 1307 (11th Cir. 2003) a summary judgment to an officer who engaged in a ruse to lure plaintiff from her home which resulted in the arrest of

plaintiff for obstructing another officer executing a custody order was affirmed on appeal. The court held that an officer may arrest an offender without violating the Fourth Amendment if that officer has probable cause to believe that the individual has committed even a very minor criminal offense in his presence. Regarding plaintiffs' burden of demonstrating a violation of clearly established law, the court in Storck noted that the party contesting qualified immunity must show that the law was very clearly established by either pointing to a materially similar case that has been already decided which revealed that the challenged conduct was unlawful or by demonstrating that words of pertinent federal statute or federal constitutional provision are specific enough to establish the law applicable to a particular conduct and circumstances. That cannot be done by Plaintiffs in this case. Indeed, as will be discussed later in this brief, the case law supports a charge of reckless endangerment in the circumstances found by Defendant Cremeens.

In Wohl v. City of Homewood, 915 F. Supp. 339 (S.D. Fla. 1995) the city and its fire department performed an inspection of a hotel. Several code violations were revealed including the lack of a sprinkler system. As a result, the fire chief imposed a live fire watch at the hotel and gave plaintiff thirty days to comply with all code requirements. Two fireman were stationed at the hotel around the clock at substantial cost to the hotel. On appeal of an enforcement board order, a circuit court agreed with the plaintiff, reversed the board's order allowing the fire watch and held that the city was not authorized to impose a fine or live fire watch. The plaintiff then commenced an action against the defendants pursuant to § 1983.

The fire chief asserted that he was entitled to qualified immunity from personal liability. The federal district court noted that the plaintiff did not assert that the fire chief's actions violated clearly established law but rather asserted that the fire chief's motivation to close the hotel violated

11

plaintiff's constitutional rights. The district court found that the fire chief's motives were irrelevant because the subjective intent of the chief/government actor plays no part in the qualified immunity analysis. Instead, the test is one of objective reasonableness - not subjective good faith. It was undisputed that the hotel did not comply with fire code requirements when the live fire watch was initiated by the chief pursuant to the powers with which he was vested. Summary judgment was thereby granted in favor of the fire chief.

Stachel v. City, 51 F. Supp. 2d 1326 (M.D. Fla. 1999) involved a § 1983 action brought by a condominium manager against a fire inspector and deputy sheriff alleging that they violated her Fourth and Fourteenth Amendment rights by falsely arresting her for interfering with a fire inspection and resisting the inspection without violence. The condominium manager also asserted state law claims of battery, false arrest and malicious prosecution. First, finding that there was no evidence that the fire inspector was not acting within his discretionary function, the court concluded that the issue became whether the law was clearly established at the time of the arrest and whether defendant's conduct violated that clearly established law. In Stachel the plaintiff contended that the fire inspector was not entitled to qualified immunity because he had no probable cause to arrest the plaintiff. The court stated that the essential issue in making that determination was whether at the time of the arrest the defendants had arguable probable cause to believe that plaintiff had committed the offense. The court reasoned that arguable probable cause is distinct from actual probable cause and may be found where a reasonable officer could have believed that probable cause existed. The court then held that the defendants were entitled to qualified immunity because they had arguable probable cause to arrest the plaintiff.

In another case analogous to the instant one, Post v. City of Ft. Lauderdale, 7 F.3d 1552 (11th

Cir. 1993) involved a determination that an officer was entitled to qualified immunity because as a reasonable officer he could have believed that probable cause to arrest existed. In Post the plaintiff brought § 1983 false arrest claim based on an arrest arising out of a violation of the restaurant's maximum capacity level. The Eleventh Circuit Court of Appeals held that defendants were entitled to qualified immunity even though there was a dispute as to whether the restaurant actually exceeded its maximum capacity. The court stated that the issue was whether a reasonable officer in defendant's place and in the circumstances that were found could have believed that more than maximum capacity was present during the "inspection".

Continuing, the court in Post said that the issue material to qualified immunity was whether a reasonable officer in the police officer's place and cognizant of the circumstances could have believed that more than maximum occupancy was present during the code team visit. Because the officer knew the code team had found violations of the maximum occupancy violations on three earlier visits and he himself counted more than the maximum number of patrons during his visit which he verified with another code team member, the court found that under the circumstances a reasonable officer in the officer's place could have believed that more than the maximum occupancy was present (even if it was not) and consequently, he was entitled to qualified immunity because he had arguable probable cause to arrest the owner.

In Phillips v. Irven, 2007 WL 914254 (11th Cir. 2007) the court concluded that a police officer was entitled to qualified immunity on plaintiff's claim under § 1983 where a police officer had arguable probable cause to make an arrest for obstruction of governmental operations in violation of ALA. CODE §13A-10-2 (1975). In that case the defendant police officer asked the arrestee to back off so that the officer could complete his federal traffic stop during a federal DOT

inspection.

Lastly, Defendant Cremeens would also call the Court's attention to <u>Cottom v. Town of Seven Devils</u>, 30 Fed. Appx. 230, 2002 WL 369961 (4th Cir. 2002). That case involved a substantive due process claim best understood as an allegation that the town police violated plaintiff's Fourth Amendment rights to be free from unreasonable searches during certain resort sponsored parties. The court noted that the resort, as an alcoholic board licensee, was closely regulated. It was subject to reasonable warrantless administrative searches and even random searches. Thus, the court found that the burden on law enforcement in conforming their conduct to the Fourth Amendment was not great in the area of a traditionally regulated industry. The court held that plaintiff failed to produce sufficient evidence of objective unreasonableness and the police conduct of increased stops of vehicles leaving the resort and intensified patrols of the resort which plaintiff alleged resulted in the loss of business because of fear of patrons of increased police scrutiny did not violate the owner's due process rights. Affirming summary judgment for the defendants, the court concluded that the circumstances reasonably justified increased police supervision based on past complaints and the resort's past history of ABC violations and as such was a legitimate ground for increased police attention. <u>Id.</u> at 237.

In the instant case both clubs involved had a prior history of overcrowding. In fact, the Rose Supper Club and its predecessor Top Flight Club had a long history of overcrowding. In February, 2005, on two consecutive nights the Rose Supper Club was found to be overcrowded. In April of the same year the Diamonds Club was found to be overcrowded. Accordingly, increased scrutiny would have been warranted. However, the court should keep in mind that on the particular evenings made the basis of this suit actual complaints of overcrowding at both clubs were received by

14

Defendant Cremeens resulting in him proceeding to the clubs and making an actual count which demonstrated that the complaints were justified.

Nor can Plaintiffs actually prove that Cremeens' count was inaccurate. When asked in interrogatories the question of whether the clubs were overcrowded all Plaintiff could express was that they did not believe they were. Such speculation cannot be accepted as admissible evidence. FED. R. EVID. 602. (testimony based on lack of personal knowledge inadmissible)

In regard to the probable cause issue, it is well established that when facts are not in dispute whether probable cause existed is a question of law. Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990); Tepper v. Canizaro, 2005 WL 2484644 (N.D. Fla. 2005). In this case the Plaintiffs cannot dispute Defendant Cremeens' mechanical count of the number of patrons. All that their interrogatory responses reveal is that they do not believe they were over capacity. However, even if that were a correct assessment, under the Post decision Cremeens would be entitled to immunity.

## V.

### The Plaintiffs Timothy Crenshaw and Dortch Are Not Entitled to Prevail on Their Claims of Equal Protection

Defendant Cremeens is not sure if the allegations under this count of the complaint by the Plaintiffs continue to be asserted. Both Plaintiffs answered interrogatories by admitting that they could not identify any facilities or individuals that were treated any differently than they were in situations where overcrowding was alleged to exist. (Ex. 14 and 15 Responses to Interrogatory No. 7).

Nevertheless, to state a claim under the Equal Protection Clause of the Fourteenth Amendment a plaintiff must demonstrate that he was treated differently from similarly situated

persons and that the defendant unequally applied the law for the purpose of discriminating against the plaintiff. Roy v. Board, 2007 WL 3345352 (N.D. Fla. 2007). The similarly situated person and the plaintiff must be prima facie identical in all relevant aspects. Id. When an equal protection violation is alleged against an individual, the plaintiff must allege and prove that the individual himself intentionally discriminated due to an impermissible classification such as race. Bough v. City, 823 F. Supp. 1452, 1459 (E.D. Wis. 1999) quoting Washington v. Davis, 426 U.S. 229 (1976). See Roy supra (discrimination must be based on racially discriminatory intent or purpose). A plaintiff cannot rely on broad generalities in identifying a similarly situated comparator. Roy, supra. Unsupported allegations that plaintiffs were treated differently are not sufficient to withstand a motion for summary judgment. See Massey v. Desauriers, 2005 WL 2043006 (D. Vt. 2005); see also Goneaga v. March of Dimes, 51 F.3d 14 (2nd Cir. 1991). A mere failure to prosecute other offenders for violating the town code is not a basis for finding a denial of equal protection. See Zahra v. Town of Southhold, 48 F.3d 674 (2nd Cir. 1995).

The Plaintiffs in this case make nothing more than bare allegations of selective prosecution. There is no evidence before the Court that the Plaintiffs were selectively prosecuted. Instead, the only evidence is that based upon complaints received from sources that have been identified by Defendant Cremeens in his affidavit in support of summary judgment, Cremeens proceeded to the nightclubs and after a walk through inspection concluded that they were overcrowded. He then conducted an actual count which proved his assessment. He then secured a warrant initially for overcrowding. However, when told by the magistrate that he would have to redo the affidavit that accompanied the warrant the charge of reckless endangerment was brought. The two individual Plaintiffs were initially found guilty of that charge in municipal court. It was only on subsequent

appeal to circuit court that the charges of reckless endangerment was dismissed based on the finding that the actions of allowing a nightclub to be overcrowded did not warrant such a charge. There is no evidence of a denial of equal protection.

## VI.

## The Charge of Reckless Endangerment Was Appropriate

As stated earlier, a person commits a crime of reckless endangerment "if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." ALA. CODE § 13A-6-24 (1975). Reckless endangerment is a Class A misdemeanor. Id. The charge of reckless endangerment "does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the area of danger." Hale v. State, 654 So. 2d 83, 86 (Ala. Crim. App. 1995) (emphasis supplied).

Reckless endangerment has been stated to be a purely statutory crime. Holbrook v. State of Maryland, 772 A. 2d 1240 (Md. 2001). Such statutes are aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. Id. It is the reckless conduct and not the harm caused by the conduct, if indeed any harm does occur, which the statute was intended to criminalize. Id. Thus, the focus is on the conduct of the accused; a defendant may be guilty of the crime even where he has caused no injury. Id.; see State v. Albrecht, 649 A. 2d 336 (Md. 1994). A crime such as arson is a specific intent crime requiring a defendant to act "willfully and maliciously" whereas the crime of reckless endangerment has been considered to be a general intent crime, one which the *mens rea* requirement is the conscious disregard of the risk and indifference to the consequences to other persons. Id. Consequently, the requisite *mens rea* for reckless endangerment is not whether the defendant intended to create a substantial risk of death or serious

17

bodily harm but whether he acted in reckless disregard of that risk. Id.

Reckless endangerment has been held under the United States Sentencing Guidelines to provide for enhancement of sentencing where the offense involved "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." 18 USSG §2L 1.1(b)(5). Federal courts in criminal cases have upheld enhancement of sentencing for reckless endangerment where vehicles were carrying more passengers than rated for the capacity of the vehicle. United States v. Maldonado, 384 F.3d 1228, 1231 (10th Cir. 2004). A court has also held that the creation of conditions by defendants which they should have foreseen could result in death in the event of fire supported charges of reckless endangerment in the second degree, i.e. that the defendants "recklessly engaged in conduct which created substantial risk of serious physical injury." People v. Ditsch, 470 N.Y.S.2d 158, 164-65 (N.Y. 1983) See also State v. Lopez, 822 A. 2d 948 (Conn. 2003)(discussing withdrawal of plea of guilt to reckless endangerment charge issued after repeated violations of fire code).

In People v. Reyes, 554 N.E.2d 67 (N.Y. App. 1990) the court found that the creation and continuance of a dangerous condition presented a substantial and unjustifiable risk of death or injury legally sufficient for the indictment of the owner of building for charges including reckless endangerment. Likewise, in Commonwealth v. Smalis, 592 A. 2d 669 (Pa. 1991) the court held that the prosecution of a claim of reckless endangerment was not barred by a demurrer as to claims of murder and manslaughter relating to a fire in a building owned by the defendant.

## VII.

### Defendant Cremeens Has Qualified Immunity for the Claimed Violation of the Plaintiff's Due Process Rights

As cited to earlier, the cases of Cottom v. Town of Seven Devils, 30 Fed. Appx. 230, 236 (4th Cir. 2002) and Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560 (11th Cir. 1993) demonstrate that Defendant Cremeens has qualified immunity from the due process claims of not only Dortch and Timothy Crenshaw, but the two club owners (Richard Thomas and Kent Crenshaw) if indeed the latter two even have standing to assert those claims.

As a regulated ABC board licensee subject to the fire marshal's personnel capacity limitations both establishments are subject to scrutiny. Both have a history of overcrowding. On the evening the warrants were secured Cremeens received reports of overcrowding which he verified. Plaintiffs Dortch and Timothy Crenshaw were responsible for the overcrowding. Accordingly, Defendant Cremeens is entitled to qualified immunity from the claims that his conduct violated the Plaintiffs' rights to due process.

## VIII.

### The State Law Claims Against Defendant Cremeens Should Be Dismissed

A.  The Court Should Dismiss State Law Claims if the Federal Claims are Disposed of on Summary Judgment

The Eleventh Circuit has recommended that district courts dismiss a plaintiff's state law claims for malicious prosecution where the federal claim intertwined with it has been disposed of at the summary judgment stage. Ubanks v. Gerwen, 40 F.3d 1157, 1161-62 (11th Cir. 1994). See United Mine Workers v. Gibbs, 383 U.S. 715 (1966) (dismissal of state law claims is strongly encouraged where the federal law claims have been dismissed before trial).

19

B.    The Malicious Prosecution Claims Should Be Dismissed

Under Alabama law the elements of a malicious prosecution are (1) a criminal judicial proceeding instituted by the defendant against the plaintiff; (2) the justiciable proceeding was instituted against the defendant maliciously; (3) with intent to do injury to another; or (4) under such circumstances the law will imply evil intent; (5) the judicial proceedings has been terminated in favor of the plaintiff; and (6) the plaintiff suffered damages as a proximate consequence of the prosecution thereof. Alabama Pattern Jury Instruction, 24.02. Malice is defined as the intentional doing of a wrongful act without just cause or excuse  Alabama Pattern Jury Instruction, 24.04. A party who has probable cause for institution of a criminal prosecution based upon reasonable grounds and supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that a person accused is guilty of the offense charged will not support a malicious prosecution charge  Alabama Pattern Jury Instruction, 24.05.

Moreover, a malicious prosecution action is not favored in Alabama  Eidson v. Olin Corp., 527 So. 2d 1283 (Ala. 1988) citing Cutts v. American United Life Ins. Co., 504 So. 2d 1211 (Ala. 1987) and Boothby Realty Co. v. Haygood, 569 Ala. 549, 114 So. 2d 555 (1959). The reason for disfavor is because public policy requires that all persons shall resort freely to the courts for redress of wrongs and that such may be done without peril of a suit for damages in the event of an unfavorable result. Mitchell v. Folmar & Asso., 854 So. 2d 1115, 1117 (Ala. 2003). All elements must be proved. Id. In the present dispute the crucial element of the absence of probable cause to arrest does not exist. Likewise, there is no evidence that Cremeens' actions were malicious.

The absence of the element of a judicial proceeding instituted without probable cause defeats plaintiffs' malicious prosecution action. Eidson v. Olin Corp., 527 So. 2d 1283 (Ala. 1988). If facts

are undisputed as to the element of probable cause it is a question of law to be determined by the court. Lee v. Minute Stop, Inc., 2003 WL 21419174 (Ala. 2003); Gordon v. Dowdle Gas Co., 570 So. 2d 609 (Ala. 1990); Boothby Realty Co., Inc. v. Haygood, 269 Ala. 549, 114 So.2 d 555, 558 (1959). In this case it is undisputed that the two clubs were over capacity and on that basis a warrant of arrest was issued.

In this case Defendant Cremeens had probable cause to secure a warrant for the Plaintiffs. The warrant was authorized by a magistrate. The particular allegations of the warrant included advice received by Cremeens from the magistrate's office. Thus, there is no grounds for a malicious prosecution action.

While neither Timothy Crenshaw nor Dortch were convicted in circuit court of the crime of reckless endangerment, that fact does not negate probable cause to arrest them. "The mere fact that the plaintiff was acquitted in a prior action does not establish a want of probable cause." Delchamps, Inc. v. Bryant, 738 So. 2d 824, 832 (Ala. 1999), citing S.S. Kresgy Co. v. Ruby, 348 So. 2d 484 (Ala. 1977). Shortz v. City of Montgomery, 267 F. Supp. 2d 1124, 1129 (M.D. Ala. 2003) (eventual dismissal of case does not render arrest without probable cause). Instead, the test to be applied by a court when reviewing the lack-of-probable cause element in a malicious prosecution case is: Can one or more undisputed facts be found establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed. Moon v. Pillion, 2008 WL 2699683 *3 (Ala. 2008); Edison v. Olin Corp., 527 So. 2d 1283, 1285-86 (Ala. 1988).

In this case it is undisputed that both establishments were seriously overcrowded while being managed by the Plaintiffs Dortch and Timothy Crenshaw. Accordingly, there was probable cause under the facts as they existed for Cremeens to charge them with reckless endangerment.

21

C.    The Claims of Abuse of Process Should Be Dismissed

Abuse of process is distinguished from malicious prosecution in that abuse of process involves the improper use of a regularly issued process while malicious prosecution relates to a wrong in the issuance of the process or in causing the process to be issued. Wilson v. Brooks, 369 So. 2d 121 (Ala. 1979); Uphaus v. Charter Hosp. of Mobile, 582 So. 2d 1140 (Ala. Civ. App. 1991).

In C.C. & J., Inc. v. Hagood, 711 So. 2d 947 (Ala. 1998) the court described the three elements necessary for the tort of abuse of process: ulterior purpose, wrongful use and malice. Each element must be proven. As a result, the court rejected plaintiff's argument that the defendant's continued pursuit of criminal charges against plaintiff in order to collect a civil debt was improper use of the criminal process. The court found that plaintiff had confused the distinction between malicious prosecution and abuse of process. The decision concluded that the misuse of a lawful process was not sufficiently shown by the fact that the defendant, in an attempt to collect a civil debt, caused the warrant to be sworn out for plaintiff's arrest; there must be some act in furtherance of improper motive subsequent to the issuance of the process.

In the present dispute Plaintiffs confuse allegations of malicious prosecution with abuse of process. There is absolutely no evidence of any conduct by fire investigator Cremeens after Plaintiffs' arrest other than he amended the charge of the initial warrant. That action was taken after the prosecutor nolle prossed the initial charge. The action was taken by Cremeens on advice of the magistrate. It did not change the fact that Dortch and Timothy Crenshaw had allowed the nightclubs which they managed to be over capacity. There is no evidence of ulterior motive, wrongful use of the fact that Plaintiffs should be arrested or malice. As a consequence the Plaintiffs' claims of abuse of process against Defendant Cremeens should be dismissed.

Moreover, summary judgment is proper for an abuse of process action where no result was obtained that is unlawful or improperly attainable under the law. Moon v. Pillion, 2008 WL 2699683 (Ala. 2008). Because the charge of reckless endangerment was dismissed in circuit court, summary judgment is appropriate. Moon v. Pillion, supra at *4. Similarly, there is no evidence that Cremeens pursued the criminal action to obtain a result which the criminal process was not intended by law to address. Id.; Willis v. Parker, 814 So. 2d 857, 866 (Ala. 2001) (quoting Dempsey v. Denman, 442 So. 2d 63. 65 (Ala. 1983)).

## IX.

### Defendant Cremeens is Entitled to Discretionary Function Immunity as to Plaintiffs' State Law Claims

Section 6-5-338 of the Alabama Code statutorily provides law enforcement officers with immunity from state tort claims arising out of acts committed while the law enforcement officer is in engaged in the performance of a discretionary function. Because the performance of a discretionary function of deciding to arrest Plaintiffs Dortch and Timothy Crenshaw was within the scope of Defendant Cremeens' law enforcement duties, he is entitled to state agent immunity. Swann v. City of Hueytown, 920 So. 2d 1075, 1079 (Ala. 2005) (arresting or attempting to arrest persons is a discretionary function entitling an officer to immunity); Byther v. City of Mobile, 398 F. Supp. 2d 1222 (S.D. Ala. 2005) (officers were engaged in discretionary function in making arrest). Defendant Cremeens investigated and swore out a warrant for the arrest of Plaintiffs while engaged in discretionary function within the scope of his duty as a fire investigator. Consequently, he is entitled to immunity from Plaintiffs' state law tort claims of malicious prosecution and abuse of process.

ALA CODE § 6-5-338(a) (1975), states as follows:

> [E]very peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or a municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties are prescribed by the law, or by the lawful terms of their employment or appointment include the enforcement of, or the investigation or reporting of violation of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment or other lawful process with violation of, the criminal laws of this state shall at all times be deemed to be officers of this state, and as **such shall have immunity from tort liability** arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her enforcement duties. (Emphasis supplied).

The framework for analyzing discretionary function immunity claims under the quoted code section involves a two prong inquiry. If the defendant can prove that he was "engaged in the performance of discretionary functions at the time the alleged torts occurred" then the burden shifts "to the plaintiffs to demonstrate that defendant acted in bad faith, with malice or willfulness in order to deny them liability." Sheth v. Webster, 145 F.3d 1231, 1238-39 (11th Cir. 1998); Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996).

It is apparent that Cremeens did not act in bad faith, with malice or willfulness in securing warrants for the arrest of Dortch and Timothy Crenshaw. As such, Defendant Cremeens may not be held liable pursuant to immunity provisions of § 6-5-338. E.g. Woods v. Kelser, 323 F.3d 872 (11th Cir, 2003) (officer had discretionary function immunity for false arrest and malicious prosecution); Ex parte City of Tuskegee, 932 So. 2d 895 (Ala. 2005) (police officers immune from

liability for erroneous issuance of a capias warrant which led to plaintiff's arrest); <u>Swann v. City of Hueytown</u>, 920 So. 2d 1075 (Ala. 2005) (officer entitled to immunity from claim of unlawful arrest after plaintiff was arrested on an outstanding warrant for a different man with a similar name); <u>City of Birmingham v. Sutherland</u>, 834 So. 2d 755 (Ala. 2002) (officer had probable cause to make warrantless arrest of bank patron for a felony thus city and officer entitled to discretionary function immunity in suit for false imprisonment and defamation); <u>Ex parte City of Montgomery</u>, 758 So. 2d 567 (Ala. 1999) (municipality and officer entitled to immunity from arrestee's claim of malicious prosecution, assault and false imprisonment). <u>Moore v. Adams</u>, 754 So. 2d 630 (Ala. 1999) (city and state trooper sued in individual capacity by homeowner for false imprisonment, trespass and assault as a result of execution of search warrant were entitled to discretionary immunity when officers broke open homeowner's door after announcing their presence three times and demanding entry); <u>Montgomery v. City of Montgomery</u>, 732 So. 2d 305 (Ala. Civ. App. 1999) (police officers were engaging in discretionary function when they made an arrest and thus officers were immune from liability on arrestee's malicious prosecution claim although arrestee was not person named in warrant as disclosed by conflicting facts relating to the identity of the arrestee which were available to the officers at the time of the arrest).

As discussed with qualified immunity under § 1983, the state statutory immunity should be analyzed in much the same manner as qualified immunity under federal law as analyzed in arrest situations. The only difference is that state law immunity applies a subjective rather than objective intent standard. Nevertheless, under any standard it is apparent that Defendant Cremeens had probable cause to secure a warrant for the arrest of the Plaintiffs for reckless endangerment in allowing the overcrowding of the respective clubs they managed.

Moreover, if there were not probable cause for the arrest of Plaintiffs, arguable probable cause for an arrest protects the officer from liability. <u>Knight v. Jacobson</u>, 300 F.3d 1272 (11th Cir. 2002) (qualified immunity for arguable probable cause for arrest for domestic violence threats); <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1302 (11th Cir. 2001) (officer arrested flea market employee for selling goods with unauthorized trademarks had arguable probable cause to arrest even though officer had not determined that employee had reckless intent necessary to support conviction for sale).

## X.

### <u>The Absence of Standing to Prosecute this Action by<br>Plaintiffs Kent Crenshaw and Richard Thomas</u>

Plaintiffs Richard Thomas and Kent Crenshaw assert a claim of violation of their rights to due process pursuant to § 1983. The claim is based on their positions as owners of the Rose Supper Club and the Diamonds Club, respectively. However, a person is not entitled to bring a § 1983 claim arising from wrongs suffered by another person but must allege a separate harm to himself personally in order to have standing. <u>Grimm v. Borough of Norristown</u>, 226 F. Supp. 2d 606 (E.D. Pa. 2002) (an individual issued citations may make out a claim if he personally suffered a cognizable injury but an individual in his individual capacity cannot challenge notices and citations issued against the corporation). Thomas and Kent Crenshaw bring claims as individuals rather than as a corporation or business entity. They do not have standing to challenge the warrants issued against the individuals Timothy Crenshaw and Kendrick Dortch personally as being any type of due process violation. <u>Id.</u> at 634.

It is well-established that constitutional rights may not be vicariously asserted. <u>Hogu v.</u>

Lauderdale, 129 F.3d 125 (9th Cir. 1997); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th

Cir. 2002). Accordingly, in RK Ventures the court held that former nightclub owners had standing

to assert their own § 1983 claim if action was taken against them but lack standing to pursue action

against the city arising from the city's actions taken against their clubs. Apparently, the claims of

Kent Crenshaw and Richard Thomas are that the City closed their businesses down. However, these

are not cognizable claims by them as individuals. See id. Neither individual was arrested. Neither

suffered injury or damages. Neither has standing to assert a cause of action alleging a violation of

due process rights.

## XI.

### Conclusions

Based on the § 1983 claims of all the Plaintiffs, Defendant Cremeens is entitled to qualified

immunity. There was no fair warning to him that to formulate a charge of reckless endangerment

as a result of the gross overcrowding of two nightclubs was contrary to any case law, statute, similar

fact situation that had been found constitutionally repugnant or otherwise. Nor would he be capable

of knowing that to secure a warrant to arrest the individual Plaintiffs Timothy Crenshaw and

Kendrick Dortch for reckless endangerment for allowing the overcrowding of the clubs they

managed deprived them of their constitutional rights. The same is true with respect to the §1983 due

process claims of Plaintiffs Thomas and Kent Crenshaw.

Moreover, the reckless endangerment charge fits the offense committed by the Plaintiffs

Timothy Crenshaw and Dortch. That charge alleges a general intent crime whereby a defendant

commits the crime because he has disregarded the safety of others. It is apparent that Cremeens had

probable cause to secure a warrant for their arrest on that charge. Alternatively, if there did not exist

probable cause to arrest there existed arguable probable cause. Under either, Cremeens is entitled to qualified immunity.

Dated this the 14 day of August, 2008.

Respectfully submitted,

**WESLEY ROMINE (ROM002)**

**JOEL H. PEARSON (PEA019)**
**ATTORNEYS FOR DEFENDANT G.C.**
**CREMEENS**

**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**122 South Hull Street**
**Montgomery, AL 36103-4804**
**Telephone:**    **(334) 262-7707**
**Facsimile:**    **(334) 262-7742**
**Email:**        **wromine@mrplaw.com**

28

## CERTIFICATE OF SERVICE

I hereby certify that on ___August 14, 2008___, I electronically filed the foregoing with the Court using the CM/ECF system, and I hereby certify that I am serving the foregoing documents to the following:

Hon. Fred F. Bell
1015 south McDonough Street
Montgomery, AL 36104

Hon. Kimberly O. Fehl
City of Montgomery Legal Division
P.O. Box 1111
Montgomery, AL 36101-1111

Respectfully submitted,

WESLEY ROMINE (ROM002)
One of the Attorneys for Defendant
G.C. Cremeens
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804
Telephone:      (334) 262-7707
Facsimile:      (334) 262-7742
Email: wromine@mrplaw.com