RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY CRENSHAW, et al                )
                                       )
    Plaintiffs,                        )
                                       )
vs.                                    )    CASE NO. 2:07-cv-1035-MEF
                                       )
THE CITY OF MONTGOMERY, et al,         )
                                       )
    Defendants.                        )

## PLAINTIFFS' RESPONSE IN OBJECTION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Come now Plaintiffs and submit this response to the motion for summary judgment
submitted Defendant G.C. Cremeens.   The Defendant argues that summary judgment is
warranted in this case because no genuine issues of material fact exist, and, therefore, he is
entitled to judgment as a matter or law. The Plaintiffs submit that, indeed, there exist genuine
issues of material facts. Therefore, summary judgment is inapplicable in this instance.
Defendant's motion for summary judgment should be denied, and this cause should set for a jury
trial.

Attached in support of the Plaintiff's response are the following evidentiary submissions:

Exhibit 1    June 30, 2006 order of the Circuit Court of Montgomery County
             dismissing reckless endangerment claims against Timothy Crenshaw

Exhibit 2    Declaration of Kent Crenshaw

Exhibit 3    Declaration of Timothy Crenshaw

Exhibit 4    Initial Overcrowding Citation by Cremeens against Timothy Crenshaw

Exhibit 5     First Reckless Endangerment Deposition by Cremeens against Timothy Crenshaw

Exhibit 6     Second Reckless Endangerment Deposition by Mr. Cremeens against Timothy Crenshaw

## DISCUSSION

Defendant Cremeens, one of the defendants in the above-styled cause, has moved for summary judgment in two cases: *Dortch, et al., v. City of Montgomery, et al*, Case No, 2:07cv1034-MEF and *Crenshaw, et al v. City of Montgomery, et* al., Case No. 2:07cv1035-MEF. The cases have not bee consolidate; however, Defendant Cremeens makes his argument for summary judgment for both cases in one document. The Plaintiffs are filing two separate responses; however, they, except for the particular facts of each, are practically identical.

The issues in this instance are not novel, nor are they complex; the facts, however, are disputed by the parties. Therefore, the Plaintiffs and the Defendant may draw reasonable inferences from the facts; neither is permitted to submit opinions or assertions as facts. Plaintiffs would be remiss if they were not to preliminarily address Defendant's unsubstantiated assertions, submitted as "Narrative Statement of Facts" (hereinafter "narrative"). First, on the first page of the narrative, the Defendant incorrectly states that Dortch was the manager of the Rose Supper Club on November 25, 2005 and that Timothy Crenshaw was the manager of the Diamonds Club on November 24, 2005. These statements are not factual and do no represent facts. There have never been any statements, except Defendant's Cremeens' self-serving assertions, that Dortch was the manager of the Rose Supper Club on November 25, 2005 or that Timothy Crenshaw was the manager of the Diamonds Club on November 24, 2005. Also, at page 4 of the narrative, the Defendant attempts to bring into discussion alleged acts of overcrowding surrounding the Rose

Supper Club and the Diamonds Club that are not relevant to this case. (See ¶¶ 1,2, 3). Because these alleged violations are not relevant to the issues at hand, the Plaintiffs ask that they be stricken.

Further, the Defendant submits as facts supposition by stating that "It was apparent to Cremeens that Kendrick Dortch had allowed the overcrowding to occur." (See p. 6. ¶ 1,Lines 13 and 14). Cremeens' affidavit reveals that the affiant states, "I have read the above and foregoing affidavit consisting of eight pages and certify that the facts and opinions contained therein are true and correct based on my personal knowledge." (G.C.Cremeens' Affidavit, p.8, ¶24).

A supporting affidavit "…shall be made on ***personal knowledge***, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e) [emphasis supplied]. The Eleventh Circuit Court of Appeals, citing several cases from other jurisdictions, has made it clear that that the "belief" statements in affidavits are not equivalent to knowledge even if the affidavits are otherwise based on personal knowledge and that such statements based on belief are inadmissible, even if there is a general averment to personal knowledge at the beginning of the affidavits. *Pace v. Capobianco,* 283 F.3d 1275, 1278-1279 (11th Cir.2002) [internal quotations, citations, and footnotes omitted].

### Summary Judgment Standard

Summary judgment may be entered on a claim only if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56 (c), *Federal Rules of Civil Procedure. (F.R.Civ.P.).* In ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the non-moving party,

and the court must draw all reasonable inferences against the moving party. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *see also Earley v. Champion International Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). Always, in a motion for summary judgment, the burden of proof is upon the moving party.. *See Celotex Corp v. Catrett*, *supra*; *Bennett v. Parker,* 898 F.2d 1530 (11th Cir.1990).

Defendant Cremeens makes several arguments for summary judgment in his memorandum in support of his motion for summary judgment. His first argument is that he entitled to qualified immunity as to Plaintiffs Dortch's and Timothy Crenshaw's fourth amendment seizure claims. The Defendant's argument rests on the absurd assertion that Cremeens possessed probable cause to initiate warrants for Dortch's and Crenshaw's arrests and therefore he is entitled to qualified immunity. Although Cremeens cites many cases in support of his assertion that he is entitled to qualified immunity, neither lends any support to his position.

The first issue to be resolved in a 42 U.S.C. § 1983 claim is whether the complaint states a violation of a constitutional right under color of state law. *See Siegert v. Gilley,* 500 U.S. 226 (1991). In this case, it is without dispute that Cremeens was acting under color of state law when he swore out criminal warrants against Dortch and Timothy Crenshaw for overcrowding    It should be noted that Defendant Cremeens has failed to cited the authority under which he claims he had the authority to make a criminal misdemeanors arrest for overcrowding and to swear arrest warrants for alleged offenses which he did not witness.

Under the fourth amendment, an individual has a right to be free from "unreasonable search and seizures." Under the fourth amendment, an arrest is a seizure of the person. *California v. Hordri D.*, 499 U.S. 621, 624 (1991). Any arrest or any seizure having the essential

4

attributes of a formal arrest is unreasonable unless it is supported by probable cause. *See*
*Michigan v. Summers,* 452 U.S. 692, 700 (1981).   "Probable cause to arrest exists where law
enforcement official have facts and circumstances within their knowledge sufficient to warrant a
reasonable belief that the suspect had committed or was committing a crime." *United States v.*
*Floyd*, 281 F.3d 1346, 1348 (11th Cir.2002).    The determination as to whether an arresting
officer possesses probable cause or arguable probable cause depends on the elements of the
alleged crime. *See Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cor.2004).

In this instance, Cremeens sought warrants for two possible crimes for which Dortch and
Crenshaw were arrested:  overcrowding and reckless endangerment.  Cremeens alleges that he
possessed probable cause to arrest Dortch and Crenshaw because they had recklessly endangered
the patrons of the established they managed.  (Memo., p. 8, ¶ 2, lines 1-3).  First, overcrowding
does not constitute a criminal offense in the State of Alabama.  Second, Defendant Cremeens did
not observe Dortch or Crenshaw committing a crime.  Dortch was not—as Cremeens still
insists—responsible for ensuring that the Rose Supper Club was not overcrowded.  Crenshaw
was not—as Cremeens still insists—responsible for ensuring that the Diamonds Club was not
overcrowded.  Therefore, it can hardly be argued that Cremeens had facts and circumstances
within his knowledge sufficient to warrant a reasonable belief that Dortch or Crenshaw had
committed or was committing a crime because here existed no arguable probable cause for
Defendant Cremeens to make such arrests.  Second, the Circuit Court of Montgomery County
Alabama dismissed the claims against the Plaintiffs.  The Circuit Court ruled that overcrowding
does not constitute reckless endangerment.  Therefore, it cannot be argued that the Cremeens had
probable cause to believe that overcrowding constitutes reckless endangerment.  Therefore, one

would have to easily conclude that a reasonable officer could not conceivably have thought that he had probable or arguable probable cause to arrest Dortch and Crenshaw.

Defendant Cremeens has asserted that he has qualified immunity. At the summary judgment stage, the issue is whether a reasonable officer, acting under the circumstances and possessing the knowledge that Defendant Cremeens possessed, could have believed that he had probable cause to arrest. *See Lee v .Ferraro,* 284 F.3d 1188, 1195 (11th Cir.2006). The issue of qualified immunity is viewed in the light most favorable to the non-moving party. *See Kingsland v. City of Miami,* 382 F.3d 1229, 1226 (11th Cir.2004). Based on the foregoing analysis, Defendant Cremeens did not possess probable or arguable probable cause to seek arrest warrants against Dortch and Crenshaw.

Next, the issue to be resolved as to Cremeens' claim for qualified immunity is whether the law was clearly established that an arrest without probable cause or arguable probable cause violates the fourth amendment's prohibition on unreasonable searches and seizures. At the time of Dortch's and Crenshaw's arrests, the law was clearly established that an arrest without arguable cause was unreasonable. *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir.2006) and *Thorton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir.1998). The facts of this case show that, viewed in the light most favorable to Dortch and Crenshaw, that Cremeens did not possess probable cause to arrest either. Therefore, Cremeens is not entitled to qualified immunity on either issue.

Next, Cremeens argues that the Plaintiffs are not entitled to prevail of the claims of equal protection. And, on this assertion, he seeks summary judgment. However, it is not for this Court to determine, based on the complaint, whether the Plaintiffs will ultimately prevail on their

claims, but rather is it possible that they may prevail.  The equal protection requires that the government treat similarly situated person in a similar manner.  *See City of Cleburn v. Cleburn Living Ctr.* 473 U.S. 432, 439 (1985).

Plaintiffs allege that the Cremeens and the of Montgomery City retaliated against and targeted them because of Dortch's  and Crenshaw's exercising their constitutional right in seeking redress of the overcrowding charge, abused the judicial process in instituting criminal charges for reckless endangerment when it was clearly established that the alleged conduct, on which Cremeens and the City premised the entire prosecution, was not a criminal act, had never been made a criminal act by a city ordinance, and had not been declared a criminal act by the state legislature.  These persons, African American, have been treated differently than other similarly situated persons.

To state a claim  of equal protection the Plaintiffs need only show that they were treated different from other similarly situated individuals and that the defendants unequally applied a facially neutral ordinance for the purpose of discriminating against them.  *See Campbell v. Rainbow City,* 434 F.3d 1306, 1314 (11th Cir.2006).  There is no rational basis for the difference treatment of Plaintiffs and compared to the treatment of other persons who had been accused of overcrowding.  When there is no rational basis for difference treatment of similarly situated persons by the government, there is an inference of unequal treatment.  *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam).  There are sufficient facts that a jury could determine that the prosecution had a discriminatory effect and it was motivated by discriminatory purpose. *See State v. Smith*, 231 F.3d 800, 808 (11th Cir.2000).

Next, Cremeens argues that the charge of reckless endangerment was appropriate. The Circuit Court of Montgomery County Alabama has answered this question to the detriment of Defendant Cremeens. (See Exhibit 1). The Plaintiffs appealed their convictions to the Circuit Court, which stated that it could not find any jurisdiction which held that overcrowding constituted reckless endangerment. So this issue has been settled and should not be re-litigated in this instance. Therefore, Cremeens' argument for summary judgment on this issue lacks merit.

Cremeens next argues for summary judgment on the basis that he has qualified immunity for the violations of the Plaintiffs' due process rights. Summary judgment is not warranted on this issue because qualified immunity does not exist in this instance. The issue of Cremeens' assertion that he is entitled to qualified immunity has been addressed above. The facts of the case clearly show that he does not possess qualified immunity

In this instance, Cremeens charged Plaintiffs with a non-existent criminal misdemeanor offense. In Alabama, an officer cannot arrest a defendant for a misdemeanor unless he witnesses the offense. Although Cremeens did not witness Dortch or Crenshaw committing an offense, he nevertheless fabricated evidence to suggest that Dortch and Crenshaw had committed the offense. (See Exhibit 6). It was clearly established in 2005 that overcrowding was not criminal offense. In is no doubt that Cremeens fabricated evidence in an attempt to support the arrest warrants. It was clearly established that such action violates Plaintiffs' constitution rights. *In Jones* v. *Cannon,* 174 F.3d 1271, 1285 (11TH Cir.1999), the Eleventh Circuit stated that the law clearly established that the fourth amendment prohibits a police officer from knowingly making

false statements in affidavit in support of the arrest warrants that were necessary to establish probable cause.

Cremeens also claims that the state law claims of malicious prosecution and abuse of process against him should be dismissed where the federal clams has been disposed. Basically, his argument for support of his position lies in his assertion that he had probable cause to arrest the Plaintiffs. The issue of probable cause has been addressed above. Overcrowding is not a criminal offense in Alabama. Therefore, there can be no probable or arguable probable cause that a criminal offense has occurred. Despite the fact overcrowding is not a crime in Alabama, Cremeens, nevertheless, attempted to file criminal charges against the Plaintiffs. He is guilty of malicious prosecution and abuse of process.

Malicious prosecution concerns the wrongful issuance of process while abuse of process concerns the wrongful use of process after it has been issued. *See Warwick Dev. Co. v. GV Corp,* 469 Sol2d 1270, 1274 (Ala. 1985). To establish a claim of malicious prosecutions, the Plaintiffs must put forth evidence that Cremeens (1) instigated without probable cause and with malice, a prior judicial proceeding against them, (2) that the prior proceeding ended in favor of them, and (3) that they suffered damages. *Lumpkin v. Cofield,* 536 So.2d 62 (Ala.1988). Malice has been defined as whatever is done willfully and purposely, whether the motive is to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful with the knowledge of the actor, and it can be inferred from the absence of probable cause. *See Dillon v. Nix,* 55 Ala. App. 611, 613-614, 318 So.2d 308, 310 (Ala.Civ.App.1975). Cremeens instigated a prior judicial against the Plaintiffs. Certainly, there was no probable cause to instigate such a criminal proceeding against these them

for reckless endangerment or for overcrowding, and his purpose was to get criminal convictions for non-criminal offenses; the Plaintiffs were damaged by his action. There exists a prima facie case of malicious prosecution in this instance.

To establish an abuse of process claim, evidence must demonstrate the existence of an ulterior purpose; (2) a wrongful use of process, and (3) malice. *C.C. & J., Inc. V. Haygood*, 711 So.2d 947, 950 (Ala.1998). The facts demonstrate that Cremeens wrongfully used the criminal process against the Plaintiffs. He used an ordinance for overcrowding to obtain a result for which the process was not intended by law to effect. That amounts to an ulterior motive. *See Dempsey v. Denman*, 442 So.2d 63, 65 (Ala.1983). In an abuse of process claim, to demonstrate malice, the Plaintiffs are not required to demonstrate that Cremeens held ill will against the Plaintiffs or was acting out of spite, but employed the process for an end not germane thereto, for achievement of a benefit totally extraneous to or of a result not within its legitimate scope. See *Shoney's Inc v. Barnett*, 773 So.2d 1015, 1025 (Ala.Civ.App.1999) (internal quotations omitted). Each of the elements is present in the instance cases. Summary judgment is not warranted on this issue.

Next, in his memorandum in support of his motion for summary judgment, Cremeens alleges that he is entitled to discretionary function immunity as to the Plaintiffs' state law claims. In an attempt to support this position, Cremeens claims that his decision to pursue arrest warrants against Plaintiffs Dortch and Timothy Crenshaw was within the scope of his law enforcement duties. He cites as authority for the position § 6-5-338, Code of Alabama (1975). His argument lacks merit.

§ 6-5-338 provides that a peace officer shall have immunity form tort liability arising of his conduct in performance of any discretionary function within the line and scope of his enforcement duties.  Under Alabama law, however, an officer is not entitled to immunity under § 6-5-338 he makes an arrest or attempted arrest that is "beyond his authority."  *Ex parte Butts,* 775 So.2d 173, 178 (Ala.2000)

Assuming for the sake of argument that Cremeens is a peace officer,[1] § 6-5-338, does not provide absolute immunity to peace officers.    On the contrary, immunity from tort liability under this section is not appropriate "…if an officer acts with willful or malicious intent, or in bad faith."    *Borders v. City of Huntsville,* 875 So.2d 1168, 1175 (Ala.2003).    Cf. *Ex parte Cranman,* 792 So.2d 392, 405 (Ala.2000) (holding state is not entitled to immunity "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.").  *See also, Burdeshaw v. Snell,* 350 F.Supp. 944, 952-53 (M.D.Ala.2004) (holding that the complaint alleged facts which would defeat the defendant's statutory immunity defense because the defendant arrested the plaintiff for possession of drugs but failed to investigate the plaintiff's claim that he had a valid prescription for the drugs); and *Walker v. Briley,* 140 F.Supp.2d 1249, 1263 (N.D.Ala.2001) (denying motion for summary judgment by defendant police officer who argued that he was immune under § 6-5-238 from a claim of false arrest because the evidence suggested that the officer had no grounds to believe that the plaintiff had committed any offense, and a reasonable jury could determine that the arrest was in bad faith).

---

[1] Although Cremeens argues in brief that  he is entitled to immunity under § 6-5-38, he does not state in his affidavit that he is a peace officer

Cremeens' final argument is that Plaintiff Kent Crenshaw and Richard Thomas, owners respectively of the Diamonds Club and the Rose Supper Club, lack standing to prosecute this action. These Plaintiffs state that their businesses were illegally shut down; they were made to close without due process of law. They have standing to assert their claims. The Defendant has not come forth with any authority to support his contention. Hence, his motion for summary judgment should be rejected.

In this instance, a reasonable trier of the facts could find, based on the evidence in this case, that Cremeens acted without probable cause, beyond his scope of his authority, willfully, maliciously, and in bad faith. It is without argument that Cremeens acted beyond his authority; it is without argument that he acted under a mistaken interpretation of the law.   For all of the foregoing reasons, summary judgment is not appropriate and should be denied

Respectfully submitted,

FRED F. BELL  (BEL014)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I have this [3rd] day of September 2008, filed a copy of this Motion with the Clerk of Court, who will perfect service upon the parties using the CM/ECF SYSTEM, a by placing it in the United States Mail, postage prepaid, or by hand delivery, addressed as follows to the following parties:

Hon. Wesley Romine
Morrow, Romine & Pearson, P.C.
P.O. Box 4804
122 South Hull Street
Montgomery, AL 36103-4804

Hon. Kimberly O. Fehl
City of Montgomery Legal
P.O. Box 1111
Montgomery, AL 36101-1111

_____
Fred F. Bell

ADDRESS OF COUNSEL
1015 South McDonough Street
Montgomery, Alabama 36104
(334) 265-8176
(334) 265-8177 FAX
ffbell@netzero.com

13

EXHIBIT 1

## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

City of Montgomery,  
      Plaintiff,  

vs.  

Timothy Crenshaw,  
      Defendant.  

**CASE NO. CC-2006-5032**

### ORDER

Defendant was charged with reckless endangerment after his nightclub was allegedly found to be in violation of a municipal ordinance regulating overcrowding.

Reckless endangerment is a species of assault and Alabama law requires that a defendant have the actual ability to inflict harm or to commit an assault before that defendant can be found guilty. *Cobb v. State of Alabama*, 495 So2d 701 (Ala. Crim. App. 1984). Merely having too many people in a building does not evidence a present ability to commit an assault. While there may be a potential for harm, potential does not rise to the level of a crime in Alabama. See *State of Alabama v. Meier*, 422 NW2d 381 (N.D. 1988) (wherein court noted that Alabama law required more than a potential for harm).

If the city's overcrowding statute provides for penalties, the city should be limited to pursuing those penalties. Instead, the Court suspects that the city is trying to make overcrowding a crime because the city is dissatisfied with the penalties provided in the ordinance. If the city's interpretation is correct, government officials could raid a wedding reception at a private home and charge the owner with reckless endangerment. Fortunately, the law does not sustain such a view. If overcrowding is illegal under an ordinance, charge the offender under the ordinance.

RECEIVED  
6-30-06  
CIRCUIT COURT CLERK

The Court has searched in vain for a case from any jurisdiction which held that overcrowding constituted reckless endangerment. The charge is DISMISSED.

Done this the 25th day of June 2006.

Truman M. Hobbs, Jr.
Circuit Court Judge

CC:     Fred F. Bell
        Stephanie Smithee

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY CRENSHAW, et al | ) | EXHIBIT 2 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | )CASE NO. 2:07-cv-1035-MEF | |
| | ) | |
| THE CITY OF MONTGOMERY, et al, | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION

My name is Kent Crenshaw.  I am the owner of the Diamonds Club located at 5050 Narrow Lane Road in the City of Montgomery.

I am an African American.  The Diamonds Club's patrons are approximately 100 percent African American.

On November 24, 2005,  G. C. Cremeens, an officer with the City of Montgomery Fire Department came into the Diamonds Club and informed one of the employees that he thought that the Diamonds was over capacity.  Mr. Cremeens issued a uniform non-traffic Citation to Timothy Robert Crenshaw, my brother, not the manager, for violation of City Ordinance Number 29-200.  He ordered all patrons from the club.  Initially, the charge was for "overcrowding," but the charge was later changed to "reckless endangerment." And he further ordered that Diamonds be closed until Mr. Crenshaw had met court.

I was present in municipal court where Mr. Timothy Crenshaw was convicted for reckless  endangerment.  Our attorney asked Mr. Cremeens why he had changed the initial charge from overcrowding to reckless endangerment.  At that time Mr. Cremeens

stated that the reason that Mr. Dortch of the Rose Supper Club, Mr. Crenshaw of the Diamonds Club, and Mr. Williams of the Cotton Club were being tried for reckless endangerment because they challenged the City's arrest of them for overcrowding. He stated that no other persons had ever been tried for reckless endangerment for overcrowding because no one had ever challenged the City. As far as I can recall, Mr. Cremeens was asked if any white establishment had been cited for overcrowding and he state yes. He stated that none of the other clubs cited for overcrowding had been prosecuted for reckless endangerment. When asked by my attorney who told him to charge these defendants with reckless endangerment, he stated that the order came from higher up. However, he refused to name the official who had ordered him to change the charge from overcrowding to reckless endangerment.

Mr. Crenshaw was not the manager of the Diamonds Club on November 24, 2005; he was not responsible for ensuring that the Diamonds Club was not overcrowded. Neither Mr. Cremeens, nor any other official interviewed me on that date, and no official was told by me that Mr. Crenshaw was responsible for ensuring that the Diamonds Club was not overcrowded on November 24, 2005.

In order to protect my rights as a property owner against the City of Montgomery, I have had to secure legal representation.

I Declare under penalty of perjury that the foregoing state is true to the best of my knowledge and is based on personal knowledge.

September 2, 2008.

Kent Crenshaw

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY CRENSHAW, et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )CASE NO. 2:07-cv-1035-MEF |
| | ) |
| THE CITY OF MONTGOMERY, et al, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION

My name is Timothy Robert Crenshaw. I am one of the Plaintiffs in this case. I am a resident of Montgomery, Alabama. I am over the age of 21. On November 24, 2005, G. C. Cremeens, an officer with the City of Montgomery Fire Department came into the Diamonds Club and informed one of the employees that he thought that the Diamonds was over capacity. Mr. Cremeens issued a uniform non-traffic Citation to me for violation of City Ordinance Number 29-200. He ordered all patrons from the club. Initially, the charge was for "overcrowding," but the charge was later changed to "reckless endangerment." And he further ordered that Diamonds be closed until I had met court.

On November 24, 2005, I was not the manager of the Diamonds Club. I was not responsible for ensuring that the Diamonds was not overcrowded. On that night I was helping out the D.J. Mr. Cremeens never saw me allow a person to enter the club; I did not take nay money from anyone. I had no responsibility for the club security, whatsoever. My brother owns the club.

EXHIBIT 3

Lt. Cremeens signed a criminal complaint, alleging that I had violated Ordinance Number 29-2000 and an N.F.P.A rule. Thereafter, I was ordered to stand trial in the Municipal Court of Montgomery. In defending this charge, I was required to seek legal representation on the charge. I pled not guilty to the charge, and asked for a trial.

Prior to the trial of the case, I, through counsel, motioned that the charge be dismissed because overcrowding did not constitute a criminal offense, that the municipal ordinance under which I had been charged did not envision overcrowding as a criminal offense, and that the State Legislature had not made overcrowding a criminal offense in Alabama. My motion was denied by the municipal court. The case was set for trial.

When the case was called for trial, the City, through Lt. Cremeens, then changed the charge and issued another complaint and summons charging me with reckless endangerment—emanating from the alleged overcrowding as had been charged in the initial complaint. Again, I, through my attorney, moved for dismissal of the charge. Later, the City, through Mr. Cremeens, dismissed the first reckless endangerment charge at trial. However, a few days later, Mr. Cremeens instituted yet a third charge: reckless endangerment. Again, I moved for dismissal of the charge on various evidentiary, procedural, constitutional, and statutory grounds. The municipal court denied the charges, and, eventually, I was found guilty of the charge of reckless endangerment. I was sentenced to 75 days in jail, suspended, and fined $500.00 and costs. In all, the City charged me three times for one alleged offense: overcrowding.

I appealed the conviction and sentence to the Circuit Court of Montgomery County, Alabama. I moved to have the charge against me dismissed because the complaint filed by Mr. Cremeens did not constitute a criminal offense. The Circuit Court

agreed and wrote an order dismissing the charge of overcrowding on June 29, 2006. In the order, the Court wrote that overcrowding did not constitute reckless endangerment.

Because of the action of the City, I have suffered damages in that I had to used earned vacation time to go to court, I had to employ legal representation, I have suffered mental anguish; I lived in fear of losing my job because of the complaint and conviction and by having a conviction on my record, my good name and reputation have been tarnished.

I Declare under penalty of perjury that the foregoing state is true to the best of my knowledge and is based on personal knowledge.

September 2, 2008.

Timothy Robert Crenshaw

B 20585

# UNIFORM NONTRAFFIC CITATION AND COMPLAINT
(For Scheduled Nontraffic Violations or Misdemeanors)

State of Alabama
Unified Judicial System
ARJA-39    Rev. 10/88

Case Number

IN THE **Municipal** COURT OF **Montgomery** ALABAMA

Law Enforcement Agency/Organization or Department: M.F.D 0931500

The undersigned complainant, being duly sworn, deposes and says that the person herein named committed the offense hereinafter set forth in that on or about:

Month **11** Day **2 4** Year **015** At Approx. **11 55** Time ☐ AM ☑ PM ☐ MT

Offense @ Diamond Club

First **Timothy**   Middle/Maiden **Robert**   Last **Crenshaw**

Street **5941 Portsmouth Dr.**

City **Montgomery**   State **AL**   Zip **36116**

Driver's License Number **4822668**   State **AL**   Expiration Date Month **01** Day **08** Year **016**   Birth Date Month **01** Day **28** Year **64**

Height **6 06**   Weight **230**   Eyes **Bro**   Hair **Blk**   Social Security Number **420 02 6102**   Sex **M**   Race **B**

Name of Employer    Address of Employer

Did violate: ☑ Ordinance Number **29-2000**, which incorporates or encompasses Section _____ , Code of Alabama 1975, within the city limits or police jurisdiction of **Montgomery** and/or ☐ Section _____ , Code of Alabama 1975, or ☐ Rule/Regulation Number **NFPA 1 3-1.9.2** within **Montgomery** County at or near the following location (describe) **5050 Norman Bridge Rd, Diamonds Club** more particularly described in the DESCRIPTION OF OFFENSE section below.

## DESCRIPTION OF OFFENSE

Offense or Short Description of Offense:
Over crowding: allowing more occupants than allowed by Fire Marshall.

State Specific Facts Relating to Offense:
After recieving a complaint call 2 police units assisted me in an actual count of the patrons. All patrons were instructed to exit out the front door. I had an actual count of 463 which is 164 more than the 299 allowed by the Fire Marshall. I closed the business at that time.

Sworn to and acknowledged before me this date   Month **11** Day **24** Year **05**   Complainant's (Officer's) Signature **H.C. Crenicero**

Signature and Title of Judicial Officer    Officer I.D. **0953**   Agency O.R.I. AL **0 0 2 1 5 0 0**

## COURT APPEARANCE

EXHIBIT 4

By signing this citation, I am promising to appear in court on the date and at the time ... I may choose to plead guilty before a magistrate or by mail or in person, paying the ... in which event I do not have to appear in court on the date ... If I do not appear in court ... fine and costs prior to that date, I promise to pay an amount prescribed by law.

I also understand that failure to appear or to plead guilty and pay the fine and costs may result in a warrant being issued for my arrest on the present charge and I may also be charged with second-degree bail jumping.

Court Appearance Date (if applicable)
Month **11** Day **30** Year **015** Time **7:00** ☑ AM ☐ PM

Court Address **320 A. R. phy St.** **Mont. Al. 36104**

Telephone Number **241-2776**

Defendant's Signature **T.** _____

Telephone Number

NOTICE: FAILURE TO APPEAR IN COURT AND/OR FAILURE TO REMIT FINE AND COSTS WILL RESULT IN AN ARREST WARRANT BEING ISSUED

State of Alabama
Unified Judicial System

**DEPOSITION**

Warrant Number

2005 S · 343

Case Number

Form C-64(a)(front)  Rev. 11/92

IN THE  **MUNICIPAL**   COURT OF  **MONTGOMERY,**   **ALABAMA**

(Circuit, District or Municipal)   (Name of Municipality or County)

☐ STATE OF ALABAMA   ☒ MUNICIPALITY OF  **MONTGOMERY**

v. Timothy Robert Crenshaw / Diamonds _____ , Defendant

---

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

Name of Accused (or Alias)  Timothy Robert Crenshaw        Telephone Number

Social Security Number       Driver's License Number     Date of Birth 03-28-64   Age 41   Race Blk   Sex M

Height 6'06   Weight 230   Hair Blk   Eyes Brown   Complexion Dark

Address of Accused  5941 Portsmouth Dr.      City Montgomery   State Al.   Zip 36116

Name of Employer  Self  Diamonds        Employer's Telephone Number

Address of Employer  5050 Narrow Lane Rd   City Montgomery   State Al.   Zip

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense: Reckless Endangerment

Date and Time of Offense: 11-24-05   11:55 PM

Place of Occurrence: 5050 Narrow Lane Rd          DEFEN

Person Attacked or Property Damaged: _____      Exhibit 5

How Attacked: _____

Did Accused Possess or Use a Weapon? ☐ Yes   ☒ No   Type:

Damage Done or Injuries Received: _____

Value of Property: _____

Details of Offense: I responded to two complaint calls to Diamonds on 11-24-05. After doing an initial walk thru it was my opinion that the club was overcrowded. I instructed the management to turn the lights on, turn the music off and instruct all patrons to exit out of the front door. As I did the initial walk thru I noticed it was very crowded and difficult for me to walk from one side of the club to the other. Using a mechanical counter I counted each patron as they exited for a total of 463 which is 164 more than the maximum allowed by the Fire Marshall's office. The Diamonds Club was approximately 54 percent over their maximum capacity allowed by the Fire Marshall's office. In recent years we have had 100 people die in a Rhode Island club fire and 21 die in a Chicago night club after a stampede resulted from a fight. I feel that dark or dimly lit rooms, loud music and patrons consuming alcohol coupled with the club being over capacity will almost certainly result in injury or death. It is my opinion that the owner/management is recklessly endangering the patrons in the club by allowing more than the maximum set by the Fire Marshall's office. The above mentioned injury or death could result from a panic of the patrons.

DEFENDANT'S EXHIBIT F 3 11/92

DEPOSITION

DEFENDANT'S COPY

Warrant Number 2006S 00038

Case Number

IN THE **MUNICIPAL** COURT OF **MONTGOMERY,** **ALABAMA**
(Circuit, District or Municipal) (Name of Municipality or County)

☐ STATE OF ALABAMA   [X] MUNICIPALITY OF **MONTGOMERY**

v. _Timothy Robert Crenshaw / Diamonds_ , Defendant

---

**INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED**

Name of Accused (or Alias) _Timothy Robert Crenshaw_   Telephone Number

Social Security Number   Driver's License Number   Date of Birth _03-28-64_   Age _4_   Race _Blk_   Sex _M_

Height _6'06"_   Weight _230_   Hair _Blk_   Eyes _Ben_   Complexion _Dark_

Address of Accused _5941 Poets mouth Dr._   City _Montgomery_   State _Al_   Zip _36116_

Name of Employer   Employer's Telephone Number

Address of Employer _5050 Narrow In Rd_   City _Montgomery_   State _Al_   Zip

---

**INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE**

Offense: _Reckless Endangerment_

Date and Time of Offense: _11-24-05    11:55 PM_

Place of Occurrence: _5050 Narrow In Rd._   EXHIBIT 6

Person Attacked or Property Damaged: _____

How Attacked: _____

Did Accused Possess or Use a Weapon?  ☐ Yes  [X] No   Type: _____

Damage Done or Injuries Received: _____

Value of Property: _I responded to a complaint call from Tacorney Arrington that Diamonds Night Club was overcrowded. I responded on Nov. 24, 2005 at approximately 1055 PM. I entered the club and saw an employee using a mechanical counter to keep up with the number of patrons in the club. A person who represented himself as the manager accompanied me as I did my cursory count. I informed the manager that I felt the club was overcrowded and instructed him to turn the lights on and music off. I told him to instruct the patrons to exit thru the front door. I used a mechanical counter to count the patrons and my total was 4b3 which is 1164 more than the maximum allowed by the fire Marshall's office. The owner was present during the count, he was in the club and identified as Timothy Robert Crenshaw. I notified Mr. Crenshaw the his club was overcrowded. This overcrowded condition created a substantial and serious bodily harm. This was allowed by Timothy Robert Crenshaw._